IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Ronnie Joe Vanzant, ) | Civil Action No.: 8:15-cv-02876-RBH-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Dr. Berry Weissglass, Dr. Theodolph ) | |
| Jacobs, Karen Huffman, ) | |
| ) | |
| Defendants.[1] ) | |
| _____ ) | |

This matter is before the Court on a motion for order to show cause and for preliminary injunction filed by Plaintiff [Doc. 39]; and motions to dismiss or, in the alternative, for summary judgment filed by Defendants [Docs. 40, 62]. Plaintiff is proceeding pro se and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed his this action on July 15, 2015,[2] alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. [Doc. 1.] With leave of this Court, Plaintiff amended his Complaint on October 22, 2015 [Doc. 29] and subsequently filed a motion for order to

---

[1] Defendants Carolina Center for Occupational Health, Director Dawn Frazier, and Nurse Michael Murry were terminated when Plaintiff amended his Complaint on February 17, 2016. [Doc. 51.]

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on July 15, 2015. [Doc. 1 at 6 (Complaint signed July 15, 2015).]

show cause and for preliminary injunction [Doc. 39]. Defendants filed a motion to dismiss or, in the alternative, for summary judgment on December 17, 2015. [Doc. 40.] Again, with leave of Court, Plaintiff amended his Complaint on February 17, 2016. [Doc. 51 ("Second Amended Complaint").] On April 21, 2016, Defendants filed a motion to dismiss or, in the alternative, for summary judgment.[3] [Doc. 62.] The same day, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motions. [Doc. 63.] Plaintiff filed a response in opposition to Defendants' motion on May 5, 2016. [Doc. 67.] Defendants' reply was filed on May 16, 2016. [Doc. 68.] Plaintiff filed a sur reply on May 23, 2016. [Doc. 69.] Accordingly, the motion is ripe for review.

## **BACKGROUND**[4]

Plaintiff, who was a pretrial detainee at the Sheriff Al Cannon Detention Center ("Detention Center") at all times relevant to the allegations in the Complaint, alleges he received inadequate medical care and treatment. [Doc. 51 at 2.] Plaintiff alleges that on July 11, 2015, he had a seizure and was taken to the medical unit. [*Id.*] While in the medical unit, his cell was searched and contraband medications were discovered. [*Id.* at

---

[3] As stated above, Defendants Carolina Center for Occupational Health, Director Dawn Frazier, and Nurse Michael Murry were terminated per Plaintiff's Second Amended Complaint. Defendants Doctor Berry Weissglass, Doctor Theodolph Jacobs, and Karen Huffman filed the present motion.

[4] The facts included in this background section are taken directly from Plaintiff's Second Amended Complaint. [Doc. 51.]

2

3.] Plaintiff was given a disciplinary charge for possession of contraband and given fifteen days in lock-up. [*Id.*] Plaintiff states he was further punished when Defendants terminated his medications. [*Id.*] Plaintiff asserts this punishment is unconstitutional. [*Id.* at 5.]

Plaintiff seeks a declaration that his rights were violated, a preliminary and permanent injunction, compensatory damages in the amount of $50,000 against each Defendant, lawsuit costs, and any additional relief the Court deems just, proper, and equitable. [*Id.* at 7.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and entitle him to relief. When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

6

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 (Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Here, because matters outside the pleadings have been presented to and not

excluded by the Court, the Court treats the motion as one for summary judgment.

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue they are not subject to suit under 42 U.S.C. § 1983, there is no evidence they were deliberately indifferent to Plaintiff's serious medical needs, they are entitled to qualified immunity, and Plaintiff failed to comply with statutory pre-suit filing requirements under South Carolina law. [Doc. 62-1 at 5.]

**State Actors**

Defendants are employees of Carolina Center for Occupational Health, a private entity contracting with Charleston County to provide medical care to inmates and detainees housed at the Detention Center. [Docs. 62-3 at 1; 62-4 at 1; 62-5 at 1.] Defendants argue they are not persons "acting under color of State law" amendable to a § 1983 cause of action, therefore Plaintiff's claims fail as a matter of law. [*Id.* at 5–6.] The undersigned declines to recommend granting Defendants' motion on this basis. *See*, *e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988) (holding that private physicians that contracted with the state to provide medical care to prisoners were state actors because they were hired to fulfill an obligation—providing medical care—which was traditionally fulfilled by the state); *Millmine v. County of Lexington*, Case No. 3:09-1644-CMC, 2010 WL 412605 (D.S.C. Jan. 28, 2010) (unpublished) (considering whether Prison Health Services, an independent health contractor with a detention center, acted under the color of state law and declining to dismiss it as a defendant in light of the absence of clear precedent on this issue and the Fourth Circuit authority holding that private physicians who treat prison inmates may be held liable under § 1983); *Mavins v. McFadden*, Case No. 2:09-483-HFF-RSC, 2009 WL 4906573, *5 (D.S.C. Dec. 18, 2008) (unpublished) (rejecting the argument that actions by employees of Correct Care were not taken "under color of state law" as required by § 1983); *Robinson v. Green*, Case No. 2:06-cv-985-RBH, 2007 WL 1447871 (D.S.C. May 11, 2007) (unpublished) (rejecting the argument that the medical defendants were not state actors because they were employed by Prison Health Services, an independent health contractor with a detention center).

**Deliberate Indifference**

Plaintiff contends Defendants wrongfully discontinued his medications after he was caught "hoarding" medications while incarcerated at the Detention Center. [Doc. 51 at 3–6.] Defendants argue Plaintiff cannot show Defendants were deliberately indifferent to Plaintiff's medical needs. [Doc. 62-1 at 6–9.] The Court agrees Defendants are entitled to summary judgment.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)). Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. *Bell*, 441 U.S. at 539. However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 539–40.

In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870. In order to demonstrate a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. To establish deliberate indifference, an inmate must allege both that he experienced a deprivation that was "objectively sufficiently serious" and "that subjectively the officials acted with a sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks, alteration, and emphasis omitted). Negligence or medical malpractice will not establish a sufficiently culpable state of mind. *Id.* at 634. Instead, a constitutional violation does not occur unless the medical provider's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

Here, Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to his medical needs. On July 12, 2015,[5] while Plaintiff was in the medical unit, contraband medications were discovered in his cell. Plaintiff does not contest he was hoarding medications. After being advised of the medication hoarding incident, Huffman reviewed Plaintiff's medications and ordered the nurse to immediately discontinued Plaintiff's medications until those medications could be re-evaluated for clinical necessity. [Doc. 62-4

---

[5] Plaintiff alleges he had a seizure and his cell was searched on July 11, 2015. [Doc. 51 at 2.] Medical records show that Plaintiff's visit to the medical unit and search of his cell occurred on July 12, 2015. [Doc. 62-6 at 2.]

at 2.] Defendants aver that the decision to temporarily discontinue Plaintiff's medications was warranted given the discovery of Plaintiff's improper hoarding of medications, and the fact that hoarding medications "causes a serious safety concern within the prison setting, as it can pose a serious health risk to the inmate and/or other inmates or staff members." [Doc. 62-3 at 2.] Defendants state that as a matter of medical safety, when an inmate is caught hoarding medications, the policy is to review the infraction on a case-by-case basis, and discontinue an inmate's medications where it will not pose a medical risk to the inmate. [*Id.*]

Plaintiff asserts, but does not provide medical evidence in support, that since terminating his medications, he has suffered "6-seizures, 2 panic attacks, one attempted suicide and continuous mental health issues." [Doc. 51 at 4.] The records indicate that on July 14, 2015, Plaintiff was found sitting on the floor and claimed he had suffered a seizure. [Doc. 62-7.] The unit officers did not witness Plaintiff's alleged seizure, however, Plaintiff was brought to medical for observation. [*Id.*] Plaintiff was in the medical unit for ten to fifteen minutes without issue and was talking and laughing with officers. Because Plaintiff did not appear to have any issues at that time, he was returned to his unit. [*Id.*]

On July 20, 2015, Plaintiff's psychiatrist at the Detention Center, Dr. Leonard, restarted his medication (Risperdal) used for "mood lability, agitation, sleep, and anger outbursts." [Doc. 62-8.] In her patient visit report, Dr. Leonard noted Plaintiff's history of hoarding medications and she wrote, "PLS CRUSH ALL PSYCH MEDS." [*Id.*] Plaintiff concedes that the mental health department returned most of his mental health medications, as well as his heart burn medication medications on July 20, 2015. [Doc. 51 at 6.] Plaintiff further concedes his seizure medications were eventually returned. [Doc.

13

67 at 4.]

On August 18, 2015, Dr. Jacobs examined Plaintiff in the medical unit. At that visit, Plaintiff admitted to Jacobs that he had been hoarding his medications. [Doc. 62-9.] Dr. Jacobs determined Plaintiff was not a candidate for the pain medication Plaintiff was seeking. [Doc. 62-9.] On September 30, 2015, Dr. Weisglass evaluated Plaintiff. [Doc. 62-10.] Dr. Weisglass noted "the hoarding incident—to which [Plaintiff] now readily admits—is a big issue here. The meds he has used and that he want[s] for pain control pose a significant risk to him and others in terms of toxicity." [*Id.*] Dr. Weisglass further noted there was no documented nor witnessed record of the Plaintiff suffering from seizures. [*Id.*] Plaintiff counters that he does have an established history of seizure disorder and his seizure medications should not have been withheld for six months. [Doc. 67-1; Doc. 69.]

Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of deliberate indifference necessary to violate the Eighth Amendment. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir.1975). Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Plaintiff has not offered evidence that would support a finding that Defendants knew about and intentionally or with reckless disregard ignored a risk posed by Plaintiff's condition. Courts have consistently determined that prison medical doctors have not been deliberately indifferent to a prisoner's medical needs by terminating certain medications after discovering that the prisoner has been cheeking, stowing, or otherwise abusing their

14

prescribed medications. *See, e.g., Shockley v. Fox*, 444 F. App'x 36, 38 (5th Cir. 2011) (rejecting prisoner's claim that the prison medical staff's refusal to administer narcotic pain medication violated his Eighth Amendment rights); *Reed v. Sapp*, 211 F.3d 1270, 2000 WL 571994 (6th Cir. May 5, 2000) (unpublished table opinion) (finding that defendants were not deliberately indifferent to prisoner's medical needs where the prisoner had salvaged his pain medication for prohibited use). In the present case, Plaintiff was taken off his medications for safety reasons in response to a hoarding incident. One week later, Plaintiff's mental health medications were returned. Subsequently, Plaintiff's seizure medications were returned when blood test results evidenced a seizure disorder. [Doc. 69 at 2.] Plaintiff has disagreed with some aspects of his medical treatment received while incarcerated, but it is undeniable that Plaintiff has received prompt and continual care throughout his stay at the Detention Center. There is no basis for a reasonable juror to conclude from this record that an Eighth Amendment violation resulted. Accordingly, the Court finds Defendants' motion for summary judgment should be granted as to Plaintiff's deliberate indifference claims.[6]

## RECOMMENDATION

---

[6] Defendants further assert they are entitled to qualified immunity and Plaintiff has failed to comply with pre-suit statutory filing requirements. [Doc. 62 at 9–12.] Because Plaintiff has not established that Defendants violated his constitutional rights, the Court declines to proceed to a qualified immunity analysis. Further, to the extent Plaintiff alleges a claim of medical malpractice, such claim is not actionable under § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Moreover, to the extent Plaintiff is attempting to set forth a state law claim for medical malpractice, Plaintiff has failed to proffer expert testimony that Defendants deviated from the standard of care. *See* S.C. Code Ann. § 15-36-100. Accordingly, any claim of medical malpractice should be dismissed as to all Defendants.

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 62] be GRANTED and Plaintiff's motion for order to show cause and for preliminary injunction [Doc. 39] be DENIED. It is further recommended that Defendants' motion to dismiss or, in the alternative, for summary judgment directed at the previous version of the Complaint [Doc. 40] be FOUND AS MOOT.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin  
United States Magistrate Judge

June 13, 2016  
Greenville, South Carolina